UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

DAVID ABELL                                                                                              PLAINTIFF

v.                                                                           CIVIL ACTION NO. 3:09CV-333-S

THE GATES CORPORATION, et al.                                                         DEFENDANTS

### MEMORANDUM OPINION

This matter is before the court on motion of the defendants, the Gates Corporation, *et al.* (hereinafter collectively "Gates"), to dismiss or for summary judgment on Counts II and III of the Complaint (DN 10). The plaintiff, David Abell, has moved to voluntarily dismiss Count II of the complaint without prejudice (DN 14).

The complaint alleges that Abell worked for Gates from January 26, 1998 until his discharge in April, 2008. He was granted intermittent leave to care for ill family members during the period January, 2007 to January, 2008, in accordance with the Family and Medical Leave Act of 1993 ("FMLA") and Gates' personnel policies. In February, 2008, Abell again requested intermittent leave pursuant to the FMLA for the period January, 2008 to January, 2009. However, in April of 2008, Abell was terminated for failing to meet the guidelines of the attendance program. In this action, Abell claims that (1) he was wrongfully discharged from his employment with Gates in violation of the FMLA (Count I), (2) Gates intentionally inflicted mental and emotional distress upon him (Count II), and (3) his discharge was in breach of express and implied promises of job security contained in Gates' personnel policies (Count III).

In seeking to voluntarily dismiss Count II, Abell "acknowledges that the precedent in this jurisdiction does not allow state tort claims in a suit for violation of FMLA." Motion to Withdraw Count II, p. 1. He urges, however, that the courts of this jurisdiction should follow decisions from

district courts in North Carolina and Maryland which have permitted such claims. He has requested that Count II be dismissed without prejudice. On the other hand, Gates has moved to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) or, alternatively, for summary as to Count II. Gates seeks dismissal with prejudice, urging that, as in *Jones v. Metal Management Nashville, LLC*, 2009 WL 197427 (W.D.Ky. January 26, 2009), Abell has "alleged no outrageous or intolerable conduct beyond his discharge." *Id.* at *6 ("Mere termination clearly does not rise to the level of outrageous conduct required to support an intentional infliction of emotional distress claim," *quoting, Benningfield v. Pettit Environmental, Inc.*, 183 S.W.3d 567, 572 (Ky.App. 2005)). *See also, Sacharnoski v. Capital Consolidated, Inc.*, 187 F.Supp.2d 843, 845 (W.D.Ky. 2002); *Bevins v. Dollar General Corp.*, 952 F.Supp. 504, 511 (E.D.Ky. 1997). As Abell concedes that Count II fails to state a claim upon which relief may be granted in this jurisdiction, Count II will be dismissed with prejudice.

Count III alleges that Gates committed a breach of policy by terminating him from employment, failing to follow the attendance policy in its handbook, and failing to reinstate him. Complaint, ¶¶ 26-29. Gates seeks dismissal of this count on the ground that it is preempted by the collective bargaining agreement in force during the period of Abell's employment.

Abell was employed under a collective bargaining agreement ("CBA") between Gates and his union, the Industrial Division of the Communications Workers of America, AFL-CIO, CLC, Local 83766. The CBA established the terms of Abell's employment, and granted to Gates the right to make and enforce reasonable rules to assure orderly and efficient plant operations and the right to demote, suspend or discharge employees for just cause. CBA, Article II. The CBA contained attendance provisions, including a provision permitting probation, suspension, or dismissal for excessive absenteeism. CBA, Articles XIII and XV. Article XIII, Section 7, provided that "[t]he Company will grant unpaid leave in accordance with the provisions of the Family Medical [sic] Leave Act..."

Gates established Personnel Policy 826, "Leave of Absence - Family Leave" in its personnel policy and procedures manual which was published on Gates' human resources website. The front page of the manual stated, "The information contained in the Personnel Policies is intended to provide guidance for Gates' personnel-related practices and is not a guarantee of employment nor an express or implied contract..." Abell was suspended in March, then terminated in April of 2008 purportedly for failing to meet the guidelines of Gates' attendance program. The union filed a grievance on behalf of Abell claiming that Article II, Section 1 and Article XIII, Section 7 of the CBA had been violated. It stated:

> David's employment with Gates was terminated because he had used 18 days of FMLA that he was not entitled to at that time. David was not explained [sic] how the FMLA worked on a rolling calendar year. The company also made no effort to let David know that he was about to be out of days to use prior to his suspension & termination. He was treated unequal to those in the past as well.

The grievance was reviewed and denied. The union then requested arbitration. On January 6, 2009, however, the union notified Abell by letter that "you [sic] case has been carefully reviewed by the Union and found lacking in merit. Subsequently, your case has been withdrawn." Jan. 6, 2009 Letter to Abell. Abell then filed suit in this court alleging violation of the FMLA and breach of express and implied promises of job security under the terms of the policy and procedures manual.

Gates has moved to dismiss the claim for breach of policy on the ground that such claim is preempted by Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a). "Pre-emption occurs when a decision on the state claim 'is inextricably intertwined with consideration of the terms of the labor contract,' *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 213, 105 S.Ct. 1904, 1912, 85 L.Ed.2d 206 (1985), and when application of state law to a dispute 'requires the interpretation of a collective-bargaining agreement.' *Lingle v. Norge Division of Magic Chef, Inc.*, 486 U.S. 399, 407, 108 S.Ct. 1877, 1882, 100 L.Ed.2d 410 (1988)." *Jones v. General Motors Corp.,* 939 F.2d 380, 381 (6th Cir. 1991). As noted in *Barbo v. Kroger Co.*, 2007 WL 2350181 (W.D.Ky. Aug. 13, 2007), "In making this [preemption] determination, 'the court is not

bound by the "well-pleaded complaint" rule, but rather looks to the essence of the plaintiff's claim in order to determine whether the plaintiff is attempting to disguise what is essentially a contract claim as a tort.'" *Id*, at *4, *quoting, Decoe v. General Motors Corp.*, 32 F.3d 212, 216 (6th Cir. 1994).

The claim for breach of policy is clearly inextricably intertwined with consideration of the terms of the collective bargaining agreement. The family leave policy and the attendance program were created in accordance with the provisions of the CBA, the document governing Abell's employment with Gates. Despite Abell's best efforts to excise "express and implied promises of job security" purportedly found in the policy manual from the terms of employment established by the CBA, we find that interpretation of the policy provisions necessarily requires reference to the CBA under which they were established. Abell's own grievance suggests as much. Further, the policy manual states on its front page that it is a guidance document, not a guarantee of employment or an express or implied contract.

For these reasons, we hold that Count III is preempted by § 301 of the LMRA. *See, Symonds v. Day & Zimmerman, Inc.,* 981 F.2d 1255 (5th Cir. 1992), unpubl., affirming a finding of preemption of a cause of action based upon an independent contract when the general employment relationship was covered by a CBA, *quoting, J.I. Case Co. v. National Labor Relations Board*, 321 U.S. 332, 64 S.Ct. 556, 88 L.Ed. 762 (1944):

> Individual contracts, no matter what the circumstances that justify their execution or what their terms, may not be availed of to defeat or delay the procedures prescribed by the National Labor Relations Act looking to collective bargaining, nor may they be used to forestall bargaining or to limit or condition the terms of the collective agreement...

A separate order will be entered this date in accordance with this opinion.

**IT IS SO ORDERED.**

January 19, 2010

Charles R. Simpson III, Judge
United States District Court

- 4 -